case this afternoon is United States of America versus Tony Sabater. Mr. West. My name's Jim West and I speak on behalf of the appellate, Tony Sabater. At the threshold, I would like to reserve five minutes for rebuttal time. Granted. An unusual appeal and an unusual argument. I think that the case is very, very straightforward and I've attempted to put it forth in the brief that I filed. Frankly, Mr. Sabater, who was sentenced as a career offender, subsequently timely attacked his conviction. Within 11 days, in the New Jersey court, a conviction was used to put him into the career offender ranks. And after several months, that conviction was vacated by the courts in New Jersey. Mr. Sabater then followed the course that the Supreme Court of the United States had dictated in a trilogy of cases. And I cite them in my brief. Johnson, Custis, and Daniels, that indicated the way to attack a conviction that results in an enhancement of your sentence is to first take it to the state court, successfully attacking it, bring it back to federal court under 2255, the collateral attack on convictions after all appeals have been exhausted, and to receive relief in that way. Mr. Sabater did that. There's one thing standing in his way, an appeal waiver, a collateral estoppel waiver. If you will, it was contained in the plea agreement. And as your honors know, the one thing that can make that waiver not be applicable here is manifest injustice. And in my brief, I cite the Supreme Court standard for bringing a 2255 case of United States versus Hill, 1962 case, still good law. This category of 2255 petition that the Supreme Court has recognized on three separate occasions in Johnson, Custis, and Daniels as being something cognizable under 2255 would come under the standard of being a fundamental defect that inherently results in a miscarriage of justice. All right. So to enforce this plea agreement would be a miscarriage of justice. I'm sorry, Your Honor. I have a slight hearing impairment. To enforce this plea agreement would visit a miscarriage of justice upon your client. That's correct. That has to be the position. So the remedy you seek then is to unwind the agreement and have him proceed to trial? No. I don't think he has to proceed to trial. And I don't think it would unwind the agreement to send it back and have the manifest injustice removed. I think his guilty plea stands. The question is whether his sentence was proper. Are you arguing that his plea was not knowing, intelligent, and voluntarily entered? I believe his plea was knowingly, intelligently, voluntarily entered. This aspect, though, of the waiver was not, but that's a separate issue. Well, but let me just ask about that because I'm having trouble understanding the distinction between the appeal waiver. Judge Aldersert, writing for a panel of this court, upheld your client's waiver of his appellate rights. Why is the right to habeas qualitatively different? I think the opinion, which was an unpublished opinion, I believe Judge Aldersert did author, was absolutely correct. On the record, it was in front of him. The appeal waiver would stand. But now, on the 2255, you have an opportunity to present a different evidence, if you will. And that evidence is contained in Mr. Savitar's affidavit. Now, assuming we have to reach it, my position is, ultimately, don't have to reach it. Manifest injustice by definition of the Supreme Court, but assuming we have to reach it and determine whether this was a that the attorneys that represented him, Mr. Locke and Mr. Russo from Harrisburg, who are normally very competent counsel, told him to respond yes to everything the judge said. In addition, he said he was first presented with a plea agreement that had no appellate waiver in it. And he produced that and attached it as an exhibit. And knowing from experience in the Middle District of Pennsylvania, these are word process documents that come off the word process And he was, in fact, presented with them. And I think Ms. Fawcett would recognize that. Something happened that caused a second plea agreement to come out. It was not a negotiation as to the term of use that he would serve, but there was some adjustment. This plea agreement came out with an appellate waiver in, was presented to him by his counsel, not Josh Locke. Josh Locke had gone to the wedding of his daughter in California, if you will, by Mr. Locke's partner, Mr. Russo, who just went over the things that had changed and said the rest is boilerplate and answered yes to everything that the judge asked you. And in that manner, he went forward and he entered the plea. Yes, when you read the colloquy, the plea colloquy, the judge complied with Rule 11. And he specifically called the appellate waiver to his attention, and it caused sort of a little furor in the court. The defendant said, oh, right. And it had begun over a couple of times, and perhaps that could be a known intelligent waiver. But that's a factual finding. What his attorneys had done up to that point in time was not the effective assistance of counsel that he was entitled to. And what had occurred is he wound up in front of a district judge in a very intimidating posture for a man like Tony Sabator, with questions being asked him. And when they got to the appellate waiver, there was a stop, a hiatus, and it was explained to him. But even in this circuit's leading cases, which I believe are MARBI, which is cited in the government's brief extensively, it was recognized that while there is a presumption from the Rule 11 proceedings and the answers to the appellate waiver questions, that presumption can be rebutted. And if it is rebutted, it presents a factual issue to be determined by an evidentiary hearing. Let me ask you a question about the deal. The deal was, okay, 10 years instead of 20. He had a 20-year exposure, right? That was the deal. And there was a waiver in there, which you say he didn't really know what he was doing. But it was part of the deal. And what you want now is to have the sentence reduced or reconsidered because one of the underlying state convictions was vacated. But he knew at the time that he signed the plea deal that that was an issue out there, and he didn't reserve that issue, right? No, I don't think he knew it was an issue. I think he knew when he got in front of the judge, perhaps, that it was an issue. I thought they were already talking about filing papers in the state court on that issue at the time of this plea deal. That's not correct? Not with the government. That discussion was occurring with his attorneys, Josh Locke. Right. Yeah. So he knew. Yeah, I agree. He knew. He knew. So this wasn't like ñ that's why I'm having a hard time seeing the manifest injustice. When he knew this was an issue, when you're negotiating these things, part of the deals sometime are to preserve some issues, and they didn't preserve this one. I think that you have to go back. The deal was not he gets 10 years instead of 20. The deal in the Middle District of Pennsylvania always is the probation department and the judge will determine what you get based on the pre-sentence report, and that was the deal. Yeah, but they changed the charges so that the sentencing guidelines would calculate out to something in the 115 range about that? Nobody knew. The deal was, yes, we're charge bargaining here and we're going to lower the charges, but what you get is what you're entitled to if you're a career offender, if the weight of the drug is found to be so-and-so, and if all these variables, ultimately the district court will decide it. All we're asking for is not to get out of the deal, but to have the district court decide it the right way based on the right facts instead of the way it was decided, which was based on a non-constitutional conviction. Mr. West, this is Judge Aldous Sertin. I am interrupting you, and my opinion on the merits has been mentioned, but I want to read what I said at the end. We therefore conclude that saboteur's waiver of appeal was voluntarily, knowingly, and intelligently made. So that's the law of the case. But I went on to say, as saboteur validly waived his right to the present appeal, and this is very important, what I said, and saboteur has not shown at that time, he has not shown that a manifest injustice will result from enforcing the waiver, we decline to consider the merits of the appeal. And in my judgment, today the issue, given what has been emerging from the colloquy, I see this, our role here to say, to answer this question, is it just to leave a man sentenced as a career offender when one of the predicate convictions has been vacated, leaving only a single conviction, which is insufficient to maintain the enhancement? I agree totally. I think that is the issue, and it's whether that is a manifest injustice. And the issue before was whether or not he had a right to a direct appeal, which isn't a constitutional right. But his right to 2255 is a constitutional right. It's right in the Constitution. It's a different standard insofar as manifest injustice. And three Supreme Court cases and a plethora of district court, or federal circuit court cases have said, yes, this is addressable under 2255, which is the same as saying this is manifest injustice. So if there's a manifest injustice here, you don't get to the facts. Mr. West, I'm going to ask you, I'm asking you, I'm not quizzing you, because this is the first time I've seen you on this side of the case. Usually I've seen you when you were the U.S. attorney in the system. But I'm asking you, in your experience and in the case law, where an issue such as is presented here is made on an enhancement issue, has there been any case that goes into the merits of entering the plea agreement? Not that I know about that would go into the merits of the plea agreement. The plea agreement in this case. Because I'm seeing that we've had this colloquy, and your friends on the other side say, well, he's waived that because he got a good deal. He has a good deal when he entered into that plea of guilty and a waiver of a right. And I was trying to find some cases on that. Has there been any cases where we look into the benefits he had received from his plea? As your friends are arguing on the other side. I cannot cite you one, Judge Aldous, sir. But I would say this. When you read the plea agreement, the deal he got was not for 10 years, 20 years, or 15 years. It was that the judge would impose the sentence that the guidelines and the 3553 factors dictate. He bargained for a judge's discretion. And the judge exercised that discretion without all the facts, the true facts that he needed. And all he's asking for now is exercise the discretion, again, based on the facts as they exist now. Thank you, Mr. West. We'll have you back on rebuttal. Thank you, Your Honor. Ms. Fawcett? May it please the court, Christy Fawcett on behalf of the government. Ms. Fawcett, would you just pull that microphone close to you there so we make sure Judge Aldous, sir, can hear you? Thank you. I would like to get to the heart of what I think the court has characterized as the issue in this case. The government's position here is that the defendant, Mr. Sabater, knowingly and voluntarily waived his appellate rights. His waiver of his appellate rights included his waiver of his rights on collateral appeal. And there were some pains taken at the time of the guilty plea to explain to the defendant, Mr. Sabater, the meaning of a collateral appeal, both by myself and by the court. He received a suspended sentence. Let me stop you right now. It's the law of the case that he voluntarily and knowingly entered into the waiver of the right of appeal. So I think that's the law of the case. That's the law of the case of our opinion on appeal. But the question is, in that case, we said he has not shown that a manifest injustice was made. Now, how do you answer the question that I put to your friend? Isn't that the real determination here? Can you give me cases that support the government's theory now that you could go into the favor or the incidents of the plea of guilty rather than going to trial? That's been established. What cases do we have where a similar case of enhancement comes before us and we go back to, well, you got a good deal in the plea? Do you have any cases on that? I do not, Your Honor. I agree with Mr. West in that respect. I was unable to find cases. I would like to, with the court's permission, address the issue of why the government believes that there was no manifest injustice in this case. And this is actually somewhat responsive to a question that Judge Rustani had of Mr. West. The defendant in this case originally was charged with an offense that carried a statutory maximum of 40 years imprisonment. According to his affidavit, the government had stated that if he did not enter a plea of guilty, we would present a superseding indictment to the grand jury, which could result in an offense that carried a maximum term of imprisonment of life imprisonment. Obviously, both of those statutory caps were gone with the deal that he struck with the government. The statutory maximum, the most he could have received under the deal that was struck with the government, was 10 years. It couldn't have gone above that. In addition, the government – All right, so if we unwind this transaction because it's unfair to him, then he's exposed – we start over and he's exposed to a superseding indictment that puts him in jeopardy of a guidelines range up to life imprisonment. That is accurate, Your Honor. The government's position is that pursuant to the terms of the written plea agreement, if there is a decision contrary to the government's position in this case, then the original plea agreement is off the table. And we're back to the government may file a motion asking the court to say that. We're back to the original indictment as it stood with the possibility of seeking a superseding indictment. And another, I think, important possibility here, and that is that if the government had filed a information charging prior convictions, the defendant with the indictment with a statutory cap of life would have faced a mandatory term of life imprisonment. That was what he was, you know, basically looking at. I understand. I understand your argument. The logicians would call that interorum, that if the appellant succeeds here, we start all over. But that's not over. That's not before us. The sole issue before us is the question of manifest injustice. That's the sole issue. And all the cases say is look to the underlying facts when determining manifest injustice. And and I'm saying that it's the the appellant took a chance that if he wins, then we start all over. But that's not for this court. That's not for this court. We have to determine the manifest injustice. And in the government's position. Am I right? Am I wrong on that? No, I agree totally with the court that the issue here is whether or not there is manifest injustice. I think the benefit that the defendant. That's the only issue. That's the only issue before us. I agree. I think what the consequence will be. That's not before us. But I would would would assert to the court that the benefit that the defendant received as a result of entering into this bargain is important in a determination as to whether or not there was a manifest injustice. And I would argue to the court. Give me one case saying that. I don't have a case that says that. I don't think there is a case that that's decided this specific issue. As far as the government is aware. What do the cases say about let's assume the conviction is the conviction has been vacated. Do the guidelines say anything about whether the conduct of the vacated conviction should be considered? The the guidelines do state in the district court. Which which guideline and what does it say? It is for a one point two comment note six and the corresponding statute is 18 U.S.C. thirty thirty five fifty nine and I'm unable to remember the specific subsection. But that guideline and that statute say state that the under certain circumstances. And I would suggest that this case falls in those circumstances. The court can consider a conviction that has been vacated. And I've actually found the reference it is 18 U.S.C. thirty five fifty nine C7. The guidelines and as I stated the district. Even if it's vacated for constitutional reason. They cannot be considered if it's been vacated because of an error of law or because of subsequently discovered evidence exonerating the defendant. And if I may segue into another factor that I think is crucial in the court's determination as to whether or not a manifest injustice occurred in this case. And that is the reason for which the underlying state conviction was vacated. There was no determination in the vacation of that underlying state conviction that the defendant was actually innocent that he had not committed the crime with which he was charged. The underlying state conviction was vacated because there was an affidavit filed by the New Jersey Attorney General in 2002. Significantly before Mr. Sabater in this case filed his twenty two fifty five petition. In which the New Jersey State Attorney General said that there was a class of cases of class of cases for a 10 year period. In which there was a colorable claim that individuals had been stopped for improper reasons for racial profiling. There was no determination that Mr. Sabater who was actually the passenger in the car. That the car in which he was a passenger had been stopped for purposes of racial profiling. That determination was not made. He was simply in that class of individuals. And there was certainly no determination that he was not guilty of the crime for which he was convicted in New Jersey. So I believe that the reason. Ms. Fawcett, I understand your position. And it's the same thing you're doing as in your brief. But notwithstanding your reference, your recent reference. The court still cannot reinstate a career offender enhancement. Which is the only factor into criminal history. How do you respond to that? That the district court cannot make Mr. Sabater now a career offender because of the New Jersey vacated conviction. And my response, your honor, is that he paid his money, he took his chances. He entered into a knowing and voluntary waiver. He gave up certain rights. The government gave up certain rights. Because he wasn't aware of some of the circumstances that might have existed at a later date. Does not mean that that waiver was not knowing and voluntary. And it does not mean that there was a manifest injustice here. Are you suggesting at the time he entered the agreement he was not aware that he was going to get his New Jersey conviction vacated? I'm not suggesting that, your honor. I don't know that we had. There is some evidence to suggest that he knew that the New Jersey state conviction could be vacated. I don't know that we have that determination sufficiently in the record here. And I don't think that that is the deciding factor for the court's consideration. Well, let me get back to Judge Aldersert's probing about miscarriage of justice. Because I think we're all in agreement that that's the seminal issue here. But I'm confused as to how we should ask the question. Do we ask whether the waiver constitutes a miscarriage of justice? Or do we ask whether the underlying harm that Mr. Sabater might suffer by having been incorrectly, well, it was correct at the time. But subsequently deemed incorrectly calculated to be a career offender. Which question do we ask? Yeah, and that's a difficult question. I think the waiver has already been determined, as Judge Aldersert has said. The waiver itself does not constitute a manifest injustice or miscarriage of justice because it was knowing and voluntary. Well, that was a different right, though. I mean, our court made no finding with respect to the waiver of this right. We made a holding regarding the waiver of the appellate right only, right? That is correct. And the standard for whether or not it's knowing and voluntary, of course, is the same for both waivers. And as I suggested earlier, there is information in the record that supports that the defendant knew what he was waiving when he waived his, not just his appellate rights, but his collateral appeal rights as well. He specifically stopped me. Let me ask you this on this whole question of what is the law of this case? Clearly, the law of the case is that he voluntarily and knowingly entered into the waiver. Now, the question is, knowing that that was the situation, this court has said he has not shown that a manifest injustice will result. Doesn't that mean to say that if he does show that there was a manifest justice, that he would be successful in getting relief? Yes, I believe it does, but I do not believe that there is a manifest injustice. What does it mean other than that? Well, if the court is asking for circumstances under which a manifest injustice might occur, I would suggest that perhaps a manifest injustice could be found if the defendant was found to be actually innocent of the underlying crime. That hasn't occurred here. Or if there was outrageous police or government misconduct that resulted in the underlying crime. I don't think that that's been shown here. If the underlying crime was in a class of conduct that was eventually decriminalized, that might be another circumstance. But none of that. How about justice? How about say, is it justice that he be sentenced as a career criminal when we know that that's based on two convictions, one of which no longer exists and that you cannot have an enhancement with just one previous conviction? How do you get around that? I think under these circumstances, when he received a substantial benefit in return for the bargain that was struck by the government, yes, I think it is. Doesn't that occur in every plea deal? Doesn't that apply in every plea deal? That he has received a substantial benefit? Yeah. Well, if the court will recall. A deal because you're giving me a deal because if I go to trial and found guilty, I'm going to get a larger sentence. Doesn't that happen in every deal? It does. I would agree it probably does to some extent. But as the court knows, there was not an appellate waiver in the first plea agreement that was submitted to the defendant, which he rejected, and which was significantly more favorable to the government. The appellate waiver appeared in the second plea agreement, which was a significant... After the charge bargain. Yes, exactly, Your Honor. Well, actually, there was a minor charge bargain in the first one. But after the significant charge bargain that was represented in the second one, yes. That's when the appellate waiver appeared. And that's because the government had given up a lot at that point, the things that I described earlier in terms of mandatories and maximum sentences and guideline sentencing ranges, which would have been 188 to 235 apart from the mandatories and statutory maximums. Do you agree that if we agree with you that we will be making new law? Yes. That there is no precedent? I do, Your Honor. Thank you. Thank you. We understand your argument. Thank you, Mr. Paulson. Thank you. Mr. West? Thank you very much, Your Honor. Would you begin, Mr. West, for my sake, in answering the same question I posed to Ms. Fawcett? Do we inquire whether enforcing a valid waiver would result in a miscarriage of justice, or do we inquire whether treating Mr. Sabater as a career offender when he has been deemed not to be is a miscarriage of justice? It's a little bit of both, but I would say that it would be treating him as a career offender is where the weight comes down, because on the waiver side, it's completely a matter of discretion. An appellate waiver doesn't oust this court of jurisdiction. What the court has said, we will not exercise our jurisdiction in the face of an appellate waiver unless we want to. So it's one of those areas where you're not controlled by law. You're controlled by discretion. In other words, what is the right thing to do here? And I do believe that for that reason, the great weight is that the injustice here is Mr. Sabater receiving a sentence that he was not entitled to, because the essence of his bargain was, I will get what the district judge gives me on this charge bargain. And charge bargaining, plea bargaining, is the grease that makes the wheels of justice turn. And without it, everything comes to a standstill. Are you content if the result here is no deal, everything is back on the table? No. I don't think Mr. Sabater would want that, to say that all the power that the United States has through the Justice Department to impose the most stringent penalty possible is now back on the table. That might be what the lower court would be deciding, but I agree with Judge Aldister that it's not the issue here. Mr. Sabater has decided to go forward, filed this case pro se. I was appointed by the court to represent him. He wants his rights. He's the exception. He knows that he's assuming great risk. But that risk would be, if this case is remanded, the argument that you've heard from me, that Mr. Sabater is asking for nothing more than what he originally bargained for. It wasn't a term of years. It was the discretion of the district court in sentencing him, and that is what he wants. And that discretion guided by the fact as to whether or not he is a career offender. How do we know he's doing this with eyes wide open? Well, this is the same person who claims he did not know what he was doing when he just rotely responded yes to every question that the judge asked of him in open court. To every question except the one about appellate waiver in which he said, right, he didn't respond, and there was a short recess, but I guess we don't. I mean, that's speculation, right? For example, it would be speculation for us to think that maybe Mr. Sabater thought that it would be prudent to reduce his statutory maximum exposure and then seek to get his New Jersey conviction vacated rather than getting his New Jersey conviction vacated prior to going and pleading guilty in this case. We don't know. That would be all speculation, correct? It would be speculation. But knowing, entering into this, he would have Ms. Fawcett's brief, which points out in a footnote that they could, or the government contends, they could go back and start de novo on everything and reinstitute everything. I don't think they could on these facts, but that's not the issue in front of us. Would the case be different? I mean, here, if Mr. Sabater were reduced to a criminal history category of five instead of six, it's a rather modest reduction in the guidelines range. Would this case be different for purposes of evaluating whether it is a miscarriage of justice if the career offender distinction resulted in, for example, a 15-year mandatory minimum sentence, statutory sentence under the Armed Career Criminal Act? It's kind of a long question. Do you understand what I'm driving at? I think I understand what's being said, Your Honor. But Mr. Sabater is close to his release date under the present sentence. He believes that if he succeeds here and goes to a level five, he would be entitled to immediate release. Otherwise, he would be serving another year. And his ---- Well, why is that? There's nothing to stop the district judge on remand from imposing the very same 115-month sentence. No, I think that the district judge would look at it and say he's not a career offender, and therefore the guidelines have changed. But the guidelines have changed, and under Booker, he's exposed to any sentence that's reasonable. That's correct. To the statutory maximum of 120 months. It could get increased. He believes that the district court in this particular case would look at it and say, since you're not a career offender, it will go lower than what I originally imposed. Maybe he's wrong. Maybe he's wrong. Maybe he's just trying to invoke his rights and enforce his rights. But that's what he believes. And I think it's a reasonable belief. All we know for sure is that the guidelines range would be reduced by approximately one year. Correct. I agree. And in considering a sentence of this magnitude, that one-year difference in the guidelines calculation is a miscarriage of justice. Yes, it's important to Mr. Savitar. There's one thing I would like to drive home, and I know my time is up, but there is, throughout the government's brief, this inference that this wasn't really a serious thing that Mr. Savitar had his New Jersey conviction vacated. Quite frankly, it would come under the category of the 14th Amendment. It was a constitutional defect. Nothing in the guidelines would indicate that a constitutional defect of that ilk could be overlooked. I mean, we're talking about racial profiling. This court has had one case brought as a civil case on the racial profiling, exactly the same order it appears to be, and I would cite that. It's Walter Deak, D-I-Q-U-E, v. New Jersey, 603 F. 3rd, 181, a civil rights case that was brought under this same order, and nobody said, this isn't a civil rights violation. The issue was, has the statute of limitations run on a civil rights case? So this was a significant constitutional issue, a 14th Amendment issue, the very reason the 14th Amendment was passed. So it merited what the New Jersey court did. Thank you, Your Honor. Thank you, Mr. West and Ms. Fawcett. The case was very well argued. We'll take it under advisement.